**UNITED STATES of America**

v.

**Morris J. MILLER, Appellant.**

**UNITED STATES of America**

v.

**Arnold L. ROSS, Appellant.**

**Nos. 89–3044, 89–3078.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1990.

Decided June 1, 1990.

Thomas Lumbard, Washington, D.C., (appointed by this Court), for appellant Miller in 89–3044.

Mona C. Soo Hoo, with whom Donald M. Re, Los Angeles, Cal., was on the brief, for appellant Ross in 89–3078.

Kathleen A. Felton, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee in 89–3044 and 89–3078.

Before SILBERMAN, SENTELLE and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants Morris J. Miller and Arnold L. Ross were convicted on four counts of wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Miller was also convicted of conspiracy to commit wire fraud, in violation of 18 U.S.C.

§ 371. At trial, Miller and Ross sought to call John S. Matarazzo, who had testified before the grand jury as a defense witness. Over appellants' objection, the district court upheld Matarazzo's claim of his fifth amendment privilege not to testify at trial and also denied appellants permission to introduce at trial Matarazzo's grand jury testimony. We think that, even if Matarazzo retained his privilege after testifying before the grand jury, appellants were entitled to introduce Matarazzo's grand jury testimony before the trial jury, and therefore appellants are entitled to a new trial.

## I.

This case arises out of appellants' involvement in a venture in which Miller represented himself to potential customers as the managing director of the Michael St. Noir Trust, an entity that Miller held out as being in the business of providing collateral in the form of certificates of deposit to persons seeking large commercial loans. Under the terms of the arrangements, prospective borrowers were to be charged an annual fee of ten percent of the amount of the collateral provided, to be paid into escrow from the loan proceeds at the time the loan was made, but not disbursed until the termination of the loan.

The government presented evidence that Miller, with the assistance of Ross, his attorney, had offered such collateral arrangements to eleven customers, none of whom used Miller's services to fund prospective loans. The collateral consisted of certificates of deposits issued by the Commercial Bank of Djibouti. Miller testified that he received the Djibouti certificates from a "Mr. Bonomi." At a meeting with Bonomi in Los Angeles at which Miller, his colleague John Matarazzo, and Ross were present, Ross claimed he requested that Bonomi provide Ross and Miller with documents verifying the validity of the Djibouti certificates. Bonomi provided copies of confirming documents, including a telex signed by Djibouti's honorary consul in Ge-

neva, Mr. Trintinian, indicating that the Commercial Bank of Djibouti was duly formed and recorded in Geneva. According to the testimony of Luc Aden, the Governor of the Central Bank of Djibouti, Trintinian had sought for the Commercial Bank of Djibouti registration as a bank under that country's laws. After the Central Bank rejected the application, it formally notified the applicants that they were not to use the term "bank" in the course of their operations.[1] The counts on which Miller and Ross were convicted resulted from negotiations in which John Allen, of the consulting firm Allen & Rovin, was seeking a short term loan from the Sovran Bank of Maryland for a pending deal involving American Telesis International. Allen advanced Miller travel expenses for a trip to Washington to meet with representatives of American Telesis. After inspecting the business and explaining the structure of the transaction, Miller sent Allen a letter of intent committing the Michael St. Noir Trust to post certificates of deposit as collateral for the loan. At Allen's request, Ross sent him by facsimile a copy of the certificate that was to be used for the loan. After unsuccessful attempts to verify the status of the Commercial Bank of Djibouti, Allen consulted the FBI and, at the Bureau's suggestion, began recording his conversations with Miller and Ross. The investigation led to lawful searches of Miller's residence in Florida and Ross's law office in Los Angeles. Seized from Ross's (unlocked) office was a folder found lying on the floor which contained five bearer certificates of deposit from the Commercial Bank of Djibouti in the total amount of $17 million.

Miller and Ross sought to call Matarazzo, who had testified before the grand jury (and who was present when Ross and Miller met with Bonomi), as a defense witness. At Matarazzo's request, the court appointed counsel for him, who advised his client to assert his fifth amendment privilege not to testify. The court upheld the claim of privilege over appellants' contention that

---

**1.** Governor Aden testified that he had been informed that the Commercial Bank of Djibouti had changed its name to the Commercial and Industrial Finance Company after Djibouti denied it a charter, but that he had no knowledge of the Company's operations.

Matarazzo had waived the privilege by testifying before the grand jury. Defense counsel then moved for permission to use Matarazzo's grand jury testimony before the jury. The government, without specifying its grounds, objected, and the district court denied the motion.

## II.

Appellants argue that the district court committed error when it permitted Matarazzo to refuse to testify.[2] We have held that "a witness who voluntarily testifies before a grand jury without invoking the privilege against self-incrimination, of which he has been advised, waives the privilege and may not thereafter claim it when he is called to testify as a witness at the trial on the indictment returned by the grand jury, where the witness is not the defendant, or under indictment." *Ellis v. United States*, 416 F.2d 791, 800 (D.C.Cir. 1969). The government suggests that *Ellis* is out of step with other circuits that treat the trial as a wholly separate proceeding from the grand jury stage, and, therefore, the case might not be followed. But we recognized that ours was a minority view at the time of the *Ellis* decision, *see id.*, and it is still the controlling law of this circuit.

To be sure, *Ellis* requires the grand jury witness to testify at trial only if he knowingly waived his fifth amendment privilege when he testified before the grand jury. The record on this point, however, is quite confusing. The government, somewhat disingenuously in its brief to this court, claims the prosecutor "conceded" before the district judge that Matarazzo had *not* waived his privilege. (Since the government was attempting to prevent Matarazzo's testimony at trial, that is an interesting use of the word "conceded.") In fact, the prosecutor, who presumably was in a position to know what occurred, represented to the court below that "there was not a waiver *as such*," whatever that means. Before us the government seems to argue

that we should presume that because Matarazzo did not have counsel representing him during his grand jury testimony he could not have made a knowing waiver. Neither the government's representation below (its "concession") nor its argument here convinces us that Matarazzo's grand jury testimony was not a knowing waiver of his fifth amendment privilege, which only requires that he be aware of the privilege, and therefore we think the district court should have had a hearing to determine whether Matarazzo knew of his fifth amendment rights when he testified before the grand jury.

In any event, we think the conviction must be reversed regardless of the outcome of that hearing. If the hearing reveals that Matarazzo waived his fifth amendment rights by the grand jury testimony, then it was error to have denied defendants the benefit of his testimony at trial. Conversely, if Matarazzo had not waived, and, therefore, was not available as a witness, then the trial court should have permitted defendants to introduce into evidence the transcript of Matarazzo's grand jury testimony as former testimony of an unavailable witness under Rule 804(b)(1) of the Federal Rules of Evidence. We reject the government's argument that appellants did not properly preserve this issue because it was not fully raised before the district judge. Counsel for appellant requested that he be permitted to read Matarazzo's grand jury testimony to the jury; the government immediately objected, calling defense counsel's request "absurd," and the district court promptly rejected the request. Admittedly, defense counsel did not specifically refer to Rule 804(b)(1), but it is rather obvious that that provision is the appropriate basis for the introduction of the grand jury testimony. The evidentiary rule invoked by appellants' request, the hearsay exception for former testimony of an unavailable witness, is firmly rooted in our jurisprudence. *See United States v. Kelly*, 892 F.2d 255, 262 (3d Cir.1989). And appellants stated their

2. We have considered appellants' other assignments of error and believe them to be without merit.

request in terms that were adequate to alert the district judge to the legal basis for their proposed admission. *Cf. United States v. Pugliese,* 712 F.2d 1574, 1580 (2d Cir.1983); FED.R.CRIM.P. 51. That was all that was necessary for appellants to preserve for appeal the issue whether the district court abused its discretion in ruling that Matarazzo's grand jury testimony could not be admitted into evidence, once the court had ruled that Matarazzo had a valid privilege not to testify at trial. Particularly in light of the prosecutor's contemptuous objection to counsel's request—which the district judge promptly endorsed—it would seem quite anomalous to hold the issue foreclosed on appeal because it was insufficiently elaborated before the district court.

Concentrating primarily on its position that the admissibility of the prior grand jury testimony was not properly presented to the district court, the government does not really present an argument that the testimony could be properly excluded. Under Rule 804(b)(1), former testimony is admissible as an exception to the hearsay rule if the declarant is unavailable as a witness at another hearing of the same or a different proceeding if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Matarazzo's unavailability—assuming he could properly assert his privilege—is undeniable. *See, e.g., United States v. Young Bros., Inc.,* 728 F.2d 682, 690 (5th Cir.), *cert. denied,* 469 U.S. 881, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984); *In re Corrugated Container Antitrust Litigation,* 661 F.2d 1145, 1158 (7th Cir.1981), *aff'd on other grounds, sub. nom Pillsbury Co. v. Conboy,* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). And, as several circuits have recognized, the government had the same motive and opportunity to question Matarazzo when it brought him before the grand jury as it does at trial. *See, e.g., United States v. Lester,* 749 F.2d 1288, 1301 (9th Cir.1984); *United States v. Young Bros., Inc.,* 728 F.2d at 691; *United States v. Klauber,* 611 F.2d 512, 516–517 (4th Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980). Before the grand jury and at trial, Matarazzo's testimony was to be directed to the same issue—the guilt or innocence of Morris and Ross.[3]

Of course, that the district court, in our view, abused its discretion in excluding the testimony is not necessarily decisive to the issue of a new trial. The key to Morris and Ross's defense is that they did not *intentionally* hold out as valuable the false certificates of deposit. As the district court instructed the jury, it could convict appellants only if it believed the government had proved beyond a reasonable doubt that the certificates were worthless and that appellants knew that they were worthless. The government sought to portray appellants as wholly indifferent to the *bona fides* of the certificates, emphasizing for instance that they were found on the floor of Ross's office and thus implying that Ross knew they were without any value. But Matarazzo testified before the grand jury, *inter alia,* that at the crucial meeting with Bonomi, Miller and Ross skeptically pressed Bonomi for documentation to establish the authenticity of the certificates—which Bonomi provided. It is therefore impossible to say that this testimony, which corroborates appellants' own testimony, would not, if credited, have influenced the jury and, therefore, resulted in an acquittal. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); FED.R.EVID. 103(a). Appellants are entitled to a new trial at which they must be permitted either to call Matarazzo as a witness or to present his grand jury testimony.

*It is so ordered.*

---

**3.** We have examined Matarazzo's grand jury testimony and we can see no reason why the government's position in the second proceeding would differ from the first.