825 P.2d 1245

STATE of New Mexico, Plaintiff–
Appellee and Cross–
Appellant,

v.

Joe ARMENDAREZ, Defendant–
Appellant and Cross–
Appellee.

No. 18080.

Supreme Court of New Mexico.

Jan. 27, 1992.

Sammy J. Quintana, Chief Public Defender, Sheila Lewis, Appellate Defender, Santa Fe, for Joe Armendarez.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for the State.

## OPINION

RANSOM, Chief Justice.

Joe Armendarez appeals from his conviction of first-degree murder. NMSA 1978, § 30–2–1(A) (Repl.Pamp.1984). He argues first that the State created error by successfully seeking an instruction, inconsistent with the defense theory presented, on the lesser included offense of second-degree murder, and then, in closing, arguing to the jury that it could not possibly find defendant guilty of the lesser offense. Next he contends that other comments made by the State during closing argument were misstatements of the law and the evidence, and thus were improper.

*Facts.* On the evening of September 29, 1985, defendant, fifteen-year-old Denise De Los Santos, Raphael Martinez, and Ruby Gonzales spent time together drinking beer and driving in Raphael's car. Later, at the home of Ruby's sister, Cindy Gonzales, they played a drinking game known as "quarters." During the evening defendant and Denise were together, laughing and hugging each other. Sometime between 11:00 and 11:30 that night, defendant borrowed Raphael's car and left the house with Denise. Defendant later appeared at the house he shared with Rosemary Garcia and asked her to return Raphael's car. Rosemary left defendant at the house and took the car to Cindy's house. Raphael and Ruby took Rosemary back home.

The next morning Denise's body was found near State Road 2 south of Roswell. Several beer cans, a broken knife, and a blood-covered part of an automobile jack were found near the body. The victim had been struck numerous times and stabbed in the abdomen. Medical testimony indicated the wound resulting from the fatal blow matched the jack part. Testimony indicated that the jack part is compatible with the jack belonging to Raphael's car. The corresponding part was missing from Raphael's car, but no witness was able to say with certainty that the part found near the body belonged to the jack in Raphael's car.

In the information, the State charged defendant only with first-degree murder. At the close of the evidence, in addition to an instruction on deliberate-intent murder—a form of first-degree murder requiring a deliberate intent to kill—the State tendered an instruction on the lesser included offense of second-degree murder, which requires only knowledge of a strong probability of death or great bodily harm. NMSA 1978, § 30-2-1(B). Defendant objected to the instruction on second-degree murder. The court overruled the objection and instructed the jury on both degrees of murder.

■ *Right to a fair trial not violated by State's first securing lesser included offense instruction and then arguing against lesser included offense at closing.* At the outset, we clarify the issues the defendant does not raise. He does not contend (nor could he) that second-degree murder is not a lesser included offense of first-degree murder, *see* § 30-2-1(B); nor does he contend that he did not have notice of possible conviction on a lesser included offense.

As best we can discern, defendant's primary argument is that the perceived inconsistency between the State seeking a lesser included offense instruction and then, in closing, arguing there was no evidence to support such instruction, is reversible error. The inconsistency apparently lies in the fact that, in order to obtain the lesser included offense instruction, the prosecution must have contended that there was some evidence establishing the lesser offense (or that the lesser offense could reasonably be found to be the highest degree of the crime committed).

The State argued in closing that "nobody in his right mind" possibly could conceive that striking a person with the jack part was done with anything but a deliberate intent to kill. Therefore, the State argued, the jury could infer from the facts a deliberate intent to kill. Defendant's attorney responded by telling the jury it should find not only that the State failed to prove beyond a reasonable doubt that defendant killed Denise De Los Santos, but that the State also had failed to prove whoever killed her had acted with deliberate intent.

Defendant argues that the focus of the jury's deliberations, as a result of the instruction and the State's argument, shifted from a question of guilt or innocence to a question of whether to convict on first- or second-degree murder. That may be so, but we fail to see that the State acted outside the bounds of propriety and with inconsistency when, on the one hand, it requested instructions on a lesser included offense that the jury reasonably might find to be the highest degree of crime committed and, on the other hand, focused its argument entirely on the highest degree of crime charged.

Defendant claims that evidence was available to both sides, but used by neither, that would have bolstered a conviction of second-degree murder instead of the greater offense. Defendant, however, stops short of arguing that his trial strategy would have changed had charges of both first- and second-degree murder appeared in the information. The unused evidence was available to defendant in his defense against first-degree murder. He made the decision not to bring in this evidence because it might have hurt his alibi defense. He has not given any indication that his strategy would have differed had the for-

mal charge included both degrees of murder. Defendant chose as his trial strategy the all-or-nothing approach of an alibi defense. The State sought a conviction on first-degree murder, yet wanted to give the jury a fall-back position in case they failed to find the deliberate intent necessary for a first-degree murder conviction. In every trial each side makes strategy decisions that later, with the benefit of hindsight, can be argued to have altered the outcome of the case. That he chose not to present available evidence when he had notice that the jury might consider second-degree murder is not a ground for reversal. We cannot allow a defendant who has made such a choice to claim on appeal that his strategy did not work and therefore allow him another trial in which to use a different strategy that might result in a conviction on an offense of less severity.

■ *Alleged misstatements of the law and the evidence in the State's closing argument do not require reversal.* Defendant claims that other statements made by the State in its closing were misstatements of law and of the evidence. We review comments made in closing argument in the context in which they occurred so that we may gain a full understanding of the comments and their potential effect on the jury. *State v. Compton,* 104 N.M. 683, 687–92, 726 P.2d 837, 841–46, *cert. denied,* 479 U.S. 890, 107 S.Ct. 291, 93 L.Ed.2d 265 (1986).

■ Defendant first attacks, as a misstatement of law, the prosecutor's comment to the jury that if they found the murder was done "consciously, knowingly, intentionally, deliberately, with premeditation, however you want to call it" then they could find defendant guilty of first-degree murder. The terms to which defendant objects are "knowingly" and "however you want to call it." There was no objection to this comment at trial and, therefore, any error was waived unless it amounts to fundamental error. *State v. Chamberlain,* 112 N.M. 723, 730, 819 P.2d 673, 680 (1991).

Although we review the claimed error because of the gravity of a conviction for first-degree murder, we find that any alleged misstatement of the law falls well short of fundamental error.

Defendant argues that "knowingly" is descriptive of the mens rea for second-degree murder. The instruction for second-degree murder, when that is the lowest degree of homicide to consider, requires the jury to find that defendant "knew that his acts created a strong probability of death or great bodily harm." SCRA 1986, 14–211. The first-degree, deliberate-intent instruction, on the other hand, calls for a finding that the "killing was with the deliberate intention to take away the life" of the victim. SCRA 1986, 14–201.

■ The jury was given written copies of the proper instructions and was instructed that arguments made by the attorneys during closing were not evidence. In order to find prejudice to defendant we would have to accept that the jury took the comments made during closing and applied them as the law of the case, ignoring the written instructions. The comments were a very brief part of a lengthy closing argument. Elsewhere in its argument the State stressed the term "deliberate intent" and used that term or forms of it instead of the terms to which defendant objects. The State also emphasized that the jury was to be the sole judge of the facts of the case. We presume that the jury followed the written instructions and did not rely for its verdict on one very brief part of the State's closing remarks. *Folz v. State,* 110 N.M. 457, 474, 797 P.2d 246, 263 (1990) (Montgomery, J., specially concurring).

Defendant argues that the State was trying to "instruct" the jury. However, upon reviewing the argument we find that the State merely was explaining the instructions given by the court, just as defendant's counsel explained instructions to the jury during the defense closing. The comments do not constitute fundamental error when viewed in context.

Defendant did object to an alleged misstatement of the evidence at trial. The court overruled the objection. Both the state and the defendant are given latitude in argument, and the court has wide discretion in controlling argument. *State v. Venegas*, 96 N.M. 61, 63, 628 P.2d 306, 308 (1981). We therefore review this comment in the context of the closing argument under an abuse of discretion standard.

In discussing a possible motive for the killing, the State set out a hypothetical scenario that it argued could be inferred from the evidence. Defendant made a timely objection, apparently out of concern that the State was about to discuss evidence that had been excluded. The judge, in his ruling, noted he would overrule the objection as far as the State had gone to that point. Defendant objected before any inappropriate comment was made, and any reference to the inadmissible evidence was avoided completely, if in fact one was about to be made. The court understood what was being asked and made a qualified ruling that sufficed to prevent any inappropriate reference to the excluded evidence. We do not see any abuse of the court's discretion.

As to defendant's claim of cumulative error, we do not find his right to a fair trial to have been compromised. *See State v. Martin*, 101 N.M. 595, 600–01, 686 P.2d 937, 942–43 (1984) (holding cumulative error requires reversal of conviction only when cumulative impact of errors was so prejudicial that defendant was deprived of fair trial). The judgment of the trial court is affirmed.

IT IS SO ORDERED.

FRANCHINI and FROST, JJ., concur.