1997-NMSC-045

946 P.2d 1066

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Tanya Doreen BACA, Defendant–
Appellant.**

No. 23329.

Supreme Court of New Mexico.

Sept. 3, 1997.

56

T. Glenn Ellington, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

Tom Udall, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

*OPINION*

BACA, Justice.

1. Pursuant to Rule 12–102 NMRA 1997, Appellant Tanya Doreen Baca ("Defendant") seeks review of her conviction for first degree murder and tampering with evidence. On appeal, Defendant first contends that the trial court erred by excluding from trial as hearsay the grand jury testimony of a defense witness. On appeal of this issue, we examine: 1) whether the Defendant preserved error; 2) whether the hearsay ruling constituted plain error; 3) whether defense counsel's failure to object to the hearsay ruling was ineffective assistance of counsel, and; 4) whether the trial court erred when it ruled that the grand jury testimony was inadmissible under the former-testimony exception to the bar against hearsay evidence.

2. The Defendant also argues that she was denied due process because of prosecutorial misconduct. With regard to this contention, we review: 1) whether the State committed prosecutorial misconduct by not granting use-immunity to a defense witness where that witness allegedly possessed knowledge important to the Defendant's case, and 2) whether the State mischaracterized the law of first degree murder during its closing such that fundamental error resulted.

3. We conclude, after consideration of Defendant's arguments, that the trial court did not err by excluding the grand jury testimony from use at trial. In addition, we do not find that the Defendant was denied due process because of prosecutorial misconduct. Therefore, we find no basis for reversal and uphold the conviction.

I.

4. Defendant was convicted of first degree murder and tampering with evidence. The State built its case against the Defendant primarily on the testimony of alleged eye-witnesses who claimed to have seen Defendant carry out the actions leading to the charges.

5. The first State witness, Eugene Throgmorton, testified that around 9 PM on November 3, 1994, he accompanied Shawn Qualtire, Defendant's pimp, to Defendant's hotel room at the Rose Villa Motel in Albuquerque. When they arrived, Defendant, Bobby Hernandez, and Defendant's daughter, Ashley, were in the room.

6. In the early hours of November 4, 1994, Throgmorton left the motel room with Defendant, Hernandez, and Qualtire for the purpose of purchasing drugs. Afterward, the group began walking back to the motel room. According to Throgmorton, Defendant suggested that the group take a route through an alley. Once in the alley, Defendant pulled out a pistol and ordered Qualtire to get against a wall. Defendant then shot Qualtire several times in the chest and again in the head as Qualtire lay on the ground. Throgmorton stated that he subsequently returned to the room with the Defendant and Hernandez. Defendant then packed her bags and called her mother to come pick her up. She also left the room for a brief time, stating that she wanted to dispose of the pistol and to find some gasoline to wash the gun powder from her hands.

7. The State also called Roger Wahl to testify. Wahl, a transvestite prostitute, testified that the Defendant came by Wahl's room on the morning in question in search of gasoline to clean her hands. During the visit, the Defendant admitted to killing Qualtire. Wahl also claimed that the Defendant threatened to kill Wahl if he told anyone about the shooting.

8. At the conclusion of the State's case, the defense called Bobby Hernandez to testify. In earlier statements to police, Hernandez told a rendition of the facts surrounding Qualtire's death that was very similar to the version given by Throgmorton. However, at trial, Hernandez testified that he had given that version of the facts under police coercion. He alleged that officers from the Albuquerque Police Department had threatened him with charges of conspiracy to commit murder if he did not give a statement similar to that of Throgmorton. Thus, Hernandez contended that his earlier statement was a fabrication, and he concluded that he never actually saw the Defendant kill anyone.

9. The Defendant also attempted to call for testimony another alleged eye-witness to

the shooting, Ms. Erica Markunes O'Leary. At trial, the court offered to provide O'Leary with counsel since she was present at the scene on the night of the shooting and since her rights and interests might be affected by the testimony she was to give in the Defendant's trial. Initially, O'Leary refused the court's offer to provide her with counsel. At that time, however, the prosecution informed O'Leary that although she was not under suspicion for the murder, she might face perjury charges if her trial testimony differed substantially from that which she gave at the grand jury. O'Leary then accepted the court's offer of counsel, and upon consultation, O'Leary refused to testify, asserting her Fifth Amendment privilege.

10. Since O'Leary refused to testify, the defense sought to have a tape of O'Leary's grand jury testimony entered into evidence at trial. The core story of O'Leary's testimony was similar to both that of Throgmorton and the initial story told to police by Hernandez, but there were substantial differences in her version of the facts surrounding the killing, including an allegation that Qualtire was beaten before he was shot. The defense argued that these differences strengthened the credibility of Hernandez, who had testified that the police coerced him into lying. Also, the Defendant believed that O'Leary's eventual testimony, in concert with Hernandez's testimony, would raise a reasonable doubt about the Defendant's guilt and would call into question the veracity of the State's witnesses. The trial court refused to allow the grand jury tape of O'Leary into evidence, finding it to be hearsay, inadmissible under the former-testimony exception to the general bar against such evidence.

## II.

11. We review whether the Defendant is entitled to any relief based upon the trial court's treatment of O'Leary's grand jury testimony as hearsay. Defendant contends first that she properly preserved the trial court's alleged error for review. Second, if error was not properly preserved, the trial court's treatment of O'Leary's testimony as hearsay is reviewable as plain error. If neither of the preceding arguments applies, then defense counsel's failure to preserve the issue was ineffective assistance of counsel. Finally, Defendant contends that the trial court erred by not admitting O'Leary's testimony under the former-testimony exception to the bar against hearsay evidence. We find no reversible error in any of the Defendant's contentions and hold that she is entitled to no relief on any of the aforementioned grounds.

## A.

■ 12. We initially consider whether the Defendant preserved error on the issue of the hearsay status of O'Leary's grand jury testimony. Defendant now contends on appeal that O'Leary's grand jury testimony was not offered into evidence to prove the truth of the matter asserted and, as such, should not have been treated as hearsay. We hold that the Defendant failed to preserve error on this issue.

■ 13. A defendant must obtain a clear ruling from the trial court in order to preserve the grounds alleged to have been in error. *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993); *State v. Garcia*, 100 N.M. 120, 123, 666 P.2d 1267, 1270 (Ct. App.1983). An objection that does not state the grounds for the objection preserves no issue for appeal. Rule 11–103(A) NMRA 1997; *State v. Barraza*, 110 N.M. 45, 49, 791 P.2d 799, 804 (Ct.App.1990). However, the objection need not be specific if the specific ground is apparent from the context. *Barraza*, 110 N.M. at 49, 791 P.2d at 799.

14. In *Garcia*, the defendant was convicted on charges of criminal sexual penetration and kidnapping. *Garcia*, 100 N.M. at 122, 666 P.2d at 1269. On appeal of the conviction, the defendant sought review of whether exclusion of certain evidence as hearsay was proper. *Id.* at 123, 666 P.2d at 1268. However, the defendant failed to bring his hearsay concerns to the attention of the trial judge, and the defendant also failed to make an offer of proof in order to include the issue within the record. *Id.* Therefore, the court of appeals refused to consider the hearsay arguments included by the defendant in his petition for review. *Id.*

15. Similarly, the Defendant in the immediate case has not preserved the issue of whether the grand jury testimony of O'Leary constituted hearsay. The record indicates that defense counsel tendered the evidence and requested that the trial court "be fair" to his client and admit the grand jury testimony. (Tr. VI, 103) However, aside from this reference, the defense made no specific argument that the testimony should be admitted because it was not hearsay; counsel did not assert that O'Leary's testimony was not being offered for the truth of the matter asserted. In fact, the record indicates that counsel moved immediately to a discussion of exceptions to the hearsay rule as a basis for admission of the grand jury testimony. The context of these arguments would not have put the court on notice that the defense objected to treatment of the testimony as hearsay. Therefore, defense counsel's statements did not preserve the alleged error for review by this Court.

### B.

16. The Defendant also argues that if error was not preserved, then the trial court's exclusion of O'Leary's grand jury testimony constituted plain error. According to Defendant's reasoning, O'Leary's grand jury testimony was not hearsay because it was not offered to prove the truth of the matter asserted. Instead, it was intended to cast doubt on the veracity of the State's witnesses and support the contention that the police created a story and pressured witnesses to adhere to that story. Defendant now argues that the trial court erred by denying admission of O'Leary's grand jury testimony, substantially affecting Defendant's ability to present her full defense. We disagree.

17. To the extent the record does not provide a clear basis for appellate review on the grounds the Defendant now asserts, Defendant must show plain error affecting a substantial right. Rule 11–103(D) NMRA 1997; Lucero, 116 N.M. at 453, 863 P.2d at 1074. The court must be convinced that the evidentiary decision constituted an injustice that creates grave doubts concerning the validity of the verdict. State v. Contreras, 1995 NMSC 064, ¶ 23, 120 N.M. 486, 903 P.2d 228; Barraza, 110 N.M. at 49, 791 P.2d at 803.

18. We hold that the Defendant is not entitled to relief under the plain error rule. Although the exclusion might have limited the theory of the defense somewhat, we are not convinced that the Defendant's right to put forth her defense was substantially hampered. Counsel had the opportunity on cross examination to explore the defense's theory that State witnesses were lying and had been pressured by the police to fabricate testimony. Furthermore, to bolster the theory that witnesses were lying, counsel had ample occasion to cite Hernandez's declaration that he had lied to police in his initial interviews and to seek admission of Throgmorton's conviction for armed robbery. Thus, the trial court's exclusion of O'Leary's testimony as hearsay did not affect a substantial right because the defense had several opportunities to present its theory through other avenues.

19. In addition, the exclusion of this evidence does not taint the validity of the verdict rendered in this case. O'Leary ultimately concluded in her grand jury testimony that she in fact saw the Defendant shoot and kill Qualtire. While there were differences between her grand jury testimony and the trial testimony of Throgmorton, these differences do not warrant relief, especially when the conclusion of the excluded evidence on the ultimate issue in this case supports the conviction.

### C.

20. We next review whether the failure by Defendant's attorney to preserve error on the hearsay issue constituted ineffective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel did not exercise the skill of a reasonably competent attorney, State v. Orona, 97 N.M. 232, 233, 638 P.2d 1077, 1078 (1982), and the defendant must also prove that the incompetent representation prejudiced the defendant's case, rendering the trial court's results unreliable. State v. Lopez, 1996 NMSC 036, ¶ 25, 122 N.M. 63, 920 P.2d 1017. The main question is whether the allegedly incompe-

tent representation prejudiced the case such that but for counsel's error, there is a reasonable probability that the result of the conviction proceedings would have been different. *Lopez*, 1996 NMSC 036, ¶ 26, 122 N.M. 63, 920 P.2d 1017.

21. We already determined that the trial court's decision to exclude O'Leary's testimony as hearsay did not affect any of the Defendant's substantial rights. Without proof of such prejudice, Defendant's claim of ineffective assistance of counsel fails, and there is no need to address whether her counsel exercised the skill of a reasonably competent attorney.

### D.

22. We also review whether the trial court erred by refusing to admit O'Leary's grand jury testimony under the former-testimony exception to the bar against hearsay evidence. The admission or exclusion of evidence is entrusted to the discretion of the trial court; its ruling will not be disturbed absent abuse of discretion. *State v. Smith*, 104 N.M. 329, 333–34, 721 P.2d 397, 401–02 (1986), *overruled on other grounds by Gallegos v. Citizens Insurance Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989); *State v. Stephens*, 99 N.M. 32, 37, 653 P.2d 863, 868 (1982). If the court erred in denying the Defendant use of the evidence, no relief is warranted unless the Defendant also shows a reasonable probability the ruling contributed to his conviction. *State v. Jett*, 111 N.M. 309, 312, 805 P.2d 78, 81 (1991). We conclude that there was no abuse of discretion, and the Defendant has not demonstrated a reasonable probability that the ruling contributed to her conviction. Therefore, we uphold the trial court's decision to exclude the testimony.

23. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Rule 11–801(C) NMRA 1997. Generally, hearsay evidence is inadmissible, except as provided for under specific exception. Rule 11–802 NMRA 1997. One such exception is Rule 11–804(B)(1) NMRA 1997. It admits into evidence the former-testimony of a currently unavailable witness as an exception to the hearsay rule, and it states in relevant part:

> Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination.

*Id.*

24. Once O'Leary invoked her Fifth Amendment privilege, the trial court correctly ruled that she was an unavailable witness. *United States v. Salerno*, 505 U.S. 317, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992) (holding that a witness who invokes the right against self-incrimination is considered unavailable within the hearsay rules); *State v. Gonzales*, 1992 NMSC 002, ¶ 15, 113 N.M. 221, 225, 824 P.2d 1023, 1027 (same). In determining the applicability of the former-testimony hearsay exception, the relevant inquiry then became whether the State, as the party against whom O'Leary's testimony was to be offered, had an opportunity and similar motive to develop the testimony at the grand jury hearing as it would have had at trial. Defendant argued at trial, and now contends on appeal, that the prosecution had a similar motive at the grand jury hearing to develop O'Leary's testimony.

25. The particular facts of the Defendant's case suggest that the State's motives in developing O'Leary's testimony at the grand jury were very different than what they would have been at trial. O'Leary claimed in her grand jury testimony that Qualtire had been beaten before he was shot. However, at the time of the grand jury hearing, the medical report on Qualtire was not yet available. When the report was finished, it did not include any information suggesting that Qualtire had been beaten, as O'Leary had testified. Instead, the report showed that, consistent with the testimony of Throgmorton and Hernandez's early statements to police, Qualtire had been shot in the abdomen three times and then shot twice in the head as he lay on the ground.

26. The prosecutor did not know at the grand jury hearing that O'Leary's testimony was going to be inconsistent with the medical evidence. Nor did the prosecutor know that other eye-witness accounts would be consistent with the medical evidence and inconsistent with O'Leary's testimony. However, because the medical information was not available prior to the grand jury hearing, the State had no reason to question O'Leary's veracity or to probe her claim that Qualtire was beaten before he was killed. *See People v. Radovick,* 275 Ill.App.3d 809, 212 Ill.Dec. 82, 88, 656 N.E.2d 235, 241 (1995) (finding no abuse of discretion by trial court for excluding grand jury testimony because the State is developing its case and "would have had little motive to challenge [a witness's] version of events at this time"). In addition, the State had no reason to question O'Leary on the Defendant's eventual theory that O'Leary and other eye-witnesses were coerced by the police to lie. Thus, the State's motives in developing O'Leary's testimony were altered substantially between the grand jury hearing and the time of trial.

27. This holding is supported by the substantial differences between a grand jury hearing and trial. First, the procedural variations between the two proceedings suggest several practical limitations on the State's ability to develop testimony at the grand jury hearing. O'Leary testified before a grand jury, and the State was obligated to present any potentially exculpatory evidence in the case. NMSA 1978, § 31-6-11 (1981). Also, the grand jury system is not run under the same technical, procedural, and evidentiary rules governing the conduct of criminal trials. *Buzbee v. Donnelly,* 96 N.M. 692, 696, 634 P.2d 1244, 1248 (1981).

28. Second, the posture of the grand jury hearing is markedly different from that of trial. Criminal trials tend to be highly confrontational. Conversely, the prosecutor's duty with the grand jury is to protect both the interests of the public and the rights of the accused. *Matter of Grand Jury of Sandoval County,* 106 N.M. 764, 768, 750 P.2d 464, 468 (Ct.App.1988). The prosecutor is not trying to prove any side of any issue, but only to develop the facts to determine if an indictment is warranted. *United States v. DiNapoli,* 8 F.3d 909, 915 (2nd Cir.1993). Such differences in posture and objectives, when considered with the facts available at the time of the grand jury hearing, lead us to decide, like the trial court, that the State's motives in developing O'Leary's testimony were very different than what they would have been at trial.

29. Defendant primarily relies on *United States v. Miller,* 904 F.2d 65 (D.C.Cir.1990) and *United States v. Salerno,* 974 F.2d 231 (2nd Cir.1992), to support her position that O'Leary's grand jury testimony should have been admitted under the former-testimony exception. This reliance is misplaced. Defendant correctly points out that in *Miller* the appellate court permitted the admission of grand jury testimony under the former-testimony exception. *Miller,* 904 F.2d at 67–68. However, the court of appeals noted that the government's approach in questioning the witness did not differ at trial. *Id.* at 68 n. 3. Conversely, in the immediate case the motives of the State in questioning witnesses changed between the grand jury hearing and trial. Although the State might have possessed an interest at the grand jury hearing in obtaining testimony as to exact dates, times, and actions, the nature of the evidence available at the time was not such that the State would have had reason to question the accuracy of O'Leary's story. Hence, the State's posture toward O'Leary's testimony would have changed substantially after the medical report became available.

30. Defendant's reliance on *Salerno* is also misplaced. Defendant correctly asserts that after remand by the Supreme Court, the Second Circuit in *Salerno* found the government had a similar motive to examine the witnesses and the district court erred in excluding the grand jury testimony. *Salerno,* 974 F.2d at 240. In the immediate case, however, the State did not examine O'Leary at the grand jury hearing as it would have at trial and did not have the same motive to do so. More significantly, the Second Circuit en banc vacated the opinion relied upon by the Defendant and reversed its holding. *DiNapoli,* 8 F.3d at 915. In reversing, the court found that at the grand jury, the prosecutor

had no interest in proving the falsity of the witness. *Id.* The prosecutor had a different motive at the grand jury proceeding, and as such, he had no motive to cross-examine the witnesses to show that their testimony was false. *Id.* Therefore, the district court was correct in excluding the grand jury testimony. *Id.*

31. In sum, substantial changes in the status of evidence and the lack of motive for the State to rigorously examine O'Leary support the trial court's decision to exclude the grand jury testimony. Furthermore, even if exclusion of the testimony had been deemed to be error, we are not convinced, as discussed earlier, that the exclusion in any way prejudiced the Defendant.

## III.

32. We now review whether prosecutorial misconduct denied the Defendant a fair trial. Defendant contends first that the trial court should have granted use-immunity to O'Leary since the prosecution improperly refused to request it. Second, Defendant argues that portions of the prosecutor's closing statement constituted prosecutorial misconduct.

### A.

■ 33. Defendant alleges that the prosecution improperly refused to grant use-immunity to O'Leary for Defendant's trial, knowing that O'Leary would invoke her Fifth Amendment privilege. Defendant contends that this was a deliberate attempt by the prosecution to suppress the truth by keeping O'Leary's testimony out, and for these reasons, the trial court violated Defendant's due process rights to compulsory process by refusing to extend use-immunity to O'Leary. We disagree.

34. In this case, when O'Leary first appeared before the trial court, she was offered an attorney to advise her, but she refused, stating that she did not believe that she needed one. The prosecution then informed her that she could face perjury charges if there were differences between her grand jury testimony and the statements that she was to give now before the court. O'Leary

then accepted the court's offer of representation, and after consultation with her attorney, O'Leary invoked her Fifth Amendment privilege.

■ 35. Defendant correctly notes that a witness cannot be encouraged or badgered not to testify. *United States v. Arthur,* 949 F.2d 211, 215–16 (6th Cir.1991). However, the prosecutor and the court should advise a witness that testimony which differs from prior sworn testimony may give rise to perjury charges. *United States v. Smith,* 997 F.2d 674, 680 (10th Cir.1993). It is not improper to merely advise a witness that he could face prosecution for perjury. *Id.*

36. There is no indication in the record that O'Leary was pressured or unduly discouraged from testifying. After consultation with an appointed independent counsel, O'Leary elected to invoke her Fifth Amendment privilege. The other alternative would have been to not warn O'Leary of the possible consequences that she might face for inconsistent testimony. This warning was correct procedure here, and we note nothing threatening or coercive about it. As such, no basis for error can be premised on the State's warning to O'Leary in this instance.

■ 37. Furthermore, we do not believe that the court was required to offer use-immunity to O'Leary. Under Rule 5–116 NMRA 1997, New Mexico courts may recognize use-immunity upon written application of the prosecuting attorney. However, there is no constitutional provision or statute in New Mexico conferring a right to use-immunity for a defense witness, and a trial court has no power to confer immunity absent a written application from the State. *State v. Cheadle,* 101 N.M. 282, 286–87, 681 P.2d 708, 712–13 (1983); *State v. Sanchez,* 98 N.M. 428, 431–34, 649 P.2d 496, 499–502 (Ct.App.1982). In *Sanchez,* the court of appeals noted:

A defendant has no sixth amendment right to demand that any witness he chooses be immunized, and the prosecution's refusal to grant immunity to a defense witness who would allegedly offer exculpatory testimony to a defendant does not amount to a denial of due process or a violation of appellant's sixth amendment rights.

98 N.M. at 434, 649 P.2d at 502. This finding has been supported by the Tenth Circuit. *See McGee v. Crist,* 739 F.2d 505, 509 (10th Cir.1984) (finding that only the prosecutor may seek witness immunity).

38. We are not convinced that the authorities cited by the Defendant undermine this finding. Defendant relies primarily on *Government of Virgin Islands v. Smith,* 615 F.2d 964, 972–73 (3rd Cir.1980), for the contention that a judge may order witness immunity in limited circumstances if the testimony is properly sought in district court, clearly exculpatory, essential to the defendant's case, and not opposed by a strong countervailing government interest. As we have discussed in earlier sections, we do not believe that O'Leary's excluded testimony was clearly exculpatory. Furthermore, the *Smith* rationale is not consistent with the weight of federal authority on this issue. *See, e.g., United States v. Hunter,* 672 F.2d 815, 818 (10th Cir.1982) (holding that the federal district court has no authority to grant immunity or to demand that the government seek immunity for a defense witness); *United States v. Capozzi,* 883 F.2d 608, 613 (8th Cir.1989) (same).

39. More importantly for our analysis, this Court specifically rejected the *Smith* rationale. *Cheadle,* 101 N.M. at 287, 681 P.2d at 713 (stating that "there is no authority to demand immunity for a witness by the defense"). Therefore, we hold that, barring a clear showing of prosecutorial misconduct, use-immunity can only be sought by the prosecution. As noted, the warning issued to O'Leary by the prosecutor did not constitute misconduct by the State, and therefore, we deny relief on this claim.

### B.

40. Finally, we review whether the prosecutor committed misconduct in his closing by allegedly misstating the law on an element of the charged crime. In his closing, the prosecutor discussed deliberation as an element of first degree murder using the following examples:

How long does it take to make a decision? Would you like french fries or baked pota-

to? French fries. Ma'am, would that be wheat bread or white? Do you want to go or do you want to stay? I'll go. Alls [sic] it takes is the ability to say this is the result of my action. Is that the result I want? That's deliberation.

And the court tells you [that] you can see that in a very short period of time. It doesn't take sitting around with a council of elders or a little lap top computer and everything. We're dealing with the human mind. Do you stop or go?

The evidence in this case shows that it was premeditated and intentional.

Part of the New Mexico jury instructions for first degree murder explain that deliberate intent is "a result of careful thought and the weighing of the considerations for and against the proposed course of action." Rule 14–201 NMRA 1997. These instructions also note that this process might take very little time, but also that it involves more than an unconsidered and rash impulse. *Id.* Defendant contends that the prosecutor's discussion of the specific intent element of first degree murder misled the jury and prejudiced the Defendant's right to a fair trial. We conclude that there is no basis for granting relief on this claim.

41. Defendant's attorney neglected to object to the alleged error during closing. Without such an objection during summation, appellate review is for fundamental error. *State v. Apodaca,* 1994 NMSC 121, ¶ 20, 118 N.M. 762, 769–70, 887 P.2d 756, 763–64. Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand. *State v. Aguilar,* 117 N.M. 501, 507, 873 P.2d 247, 253 (1994).

42. A prosecutor's summation which misstates the law invades the province of the court. *State v. Gonzales,* 105 N.M. 238, 242, 731 P.2d 381, 385 (Ct.App.1986); *State v. Diaz,* 100 N.M. 210, 214–15, 668 P.2d 326, 330–31 (Ct.App.1983). However, a prosecutor is allowed latitude in summation. *State v. Gonzales,* 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992); *State v. Chamberlain,* 112 N.M. 723, 729, 819 P.2d 673, 679 (1991). This Court reviews comments made

in closing argument in the context in which they occurred so that the court may gain full understanding of the comments and their potential effect on the jury. *State v. Armendarez*, 113 N.M. 335, 338, 825 P.2d 1245, 1248 (1992).

43. In *Armendarez*, this Court considered a fundamental error claim very similar to that which Defendant argues in the immediate case. Armendarez was convicted of first degree murder. *Id.* at 336, 825 P.2d at 1246. On appeal, he argued that the prosecutor had included an incorrect description of the law in his closing and that the State was attempting to "instruct" the jury. *Id.* at 338, 825 P.2d at 1248. This Court rejected the defendant's arguments, finding that the prosecutor was merely attempting to explain the law to the jury, just as defense counsel had. *Id.* Furthermore, the court gave the jury direct instructions regarding the elements of the crime, and we found that "the jury followed the written instructions and did not rely for its verdict on one very brief part of the State's closing remarks." *Id.* The State's conduct fell well short of fundamental error. *Id.*

44. Similarly, we conclude that the State's closing remarks in this case did not constitute fundamental error. As with *Armendarez*, the comments were a very brief part of a lengthy summation, and we believe that the prosecutor's statements were used merely as an illustration of the process one uses to weigh the considerations of a contemplated course of action. We conclude that the State did not in any way suggest to the jury that it should apply the law in a manner different than that prescribed by the judge.

45. It is also worth noting that the trial court gave the jury a clear and direct explanation of the law before deliberations began. The court instructed the jury in the presumption of the Defendant's innocence, the State's burden to prove guilt beyond a reasonable doubt, and the elements of the crime. As we decided in *Armendarez*, we are not willing to assume that the jury took the comment during closing and applied it as the law governing the case, ignoring the instructions given by the court. *Id.* We see no evidence of prejudice warranting such a con- clusion. Ample evidence was presented to support a finding of deliberation, including testimony on the Defendant's procurement of the weapon, her suggestion that the group use the alley, the wounding of Qualtire, and the firing of the fatal gunshots to the head. There are no exceptional circumstances in this case indicating a wrongful conviction based on an unwarranted or incorrect finding of deliberation. As such, we conclude that no fundamental error occurred.

## III.

46. In sum, we hold that the trial court did not err in excluding O'Leary's grand jury testimony from the trial. Furthermore, the record does not indicate that the Defendant's due process rights were violated by prosecutorial misconduct. For these reasons, we AFFIRM.

47. **IT IS SO ORDERED.**

FRANCHINI, C.J., and SERNA, J., concur.