This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.                                                                    NO. 28,569

**DONALD HUBAND,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Frank K. Wilson, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

The Rose Law Firm
Timothy L. Rose
Ruidoso, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

   Donald Huband was convicted of aggravated burglary (firearm enhancement),

NMSA 1978, Section 30-16-4(A) (1963), and NMSA 1978, Section 31-18-16 (1993); kidnapping (firearm enhancement), NMSA 1978, Section 30-4-1 (2003), and Section 31-18-16; false imprisonment (firearm enhancement), NMSA 1978, Section 30-4-3 (1963), and Section 31-18-16; aggravated assault against a household member (firearm enhancement), NMSA 1978, Section 30-3-13 (1963), and Section 31-18-16; criminal damage to property, NMSA 1978, Section 30-15-1 (1963); and two counts of criminal solicitation to commit first degree murder, NMSA 1978, Section 30-28-3 (1979), and NMSA 1978, Section 30-2-1(A)(1) (1994). He appeals those convictions, and for the reasons set forth below, we affirm.

We hold that Defendant failed to preserve his arguments regarding consolidation and reassignment, due process, improper jury instructions, and right to an attorney of his choosing; further, we hold that none of those arguments constitute fundamental error. We thus do not consider them. As for Defendant's argument regarding ineffective assistance of counsel, we hold that it too must fail because Defendant has not established a prima facie case for ineffective assistance. He remains free to pursue that claim in a habeas proceeding if he so chooses.

**BACKGROUND**

We observe at the outset that the record does not support several of Defendant's factual assertions. As stated in his brief, "[n]ot all of the following facts are supported

by the record." We will not consider such facts, "and counsel should not refer to matters not of record in their briefs." *In re Aaron L.,* 2000-NMCA-024, ¶ 27, 128 N.M. 641, 996 P.2d 431; *State v. Rojo*, 1999-NMSC-001 ¶ 53, 126 N.M. 438, 971 P.2d 829 (filed 1998) ("Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [district] court's judgment.") (second alteration) (internal quotation marks and citation omitted)); *see State v. Druktenis*, 2004-NMCA-032, ¶ 44, 135 N.M. 223, 86 P.3d 1050 (holding that defendant must "provide this Court with a sufficient record proper"). Several other facts mentioned by Defendant bear no citations to the record. We likewise refuse to consider those. *Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992); *see In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct. App. 1992) (stating that "[t]his [C]ourt will not search the record to find evidence to support an appellant's claims").

The following facts, however, are undisputed and supported by the record. On July 9, 2006, Stephen Blankenship approached Ruidoso police and stated that he and his girlfriend, Shamie Mills-Huband, had just been held at gunpoint by Defendant. Blankenship and Mills-Huband were in the process of moving Mills-Huband's belongings out of her home when Defendant, armed with a rifle, confronted them and

3

instructed them to sit down on the couch. Defendant threatened to kill both Blankenship and Mills-Huband, and after ordering Blankenship to leave, proceeded to grab Mills-Huband by the hair, push her around the house, and kick her in the stomach. Defendant also handcuffed her to a coffee table and made her read from a notebook containing derogatory remarks about herself.

When police arrived at the residence, they saw Defendant standing outside smoking a cigarette. They immediately identified themselves as police and ordered him to stop and raise his hands above his head. Defendant refused to comply with these commands and instead ran back into the house and retrieved Mills-Huband and his rifle. Thus armed, with Mills-Huband in a headlock and being used as a shield, he returned outside, where police eventually persuaded him to drop his weapon and release his hostage. Police took Defendant into custody and he was eventually charged under case number CR-06-117 with aggravated burglary with a deadly weapon, kidnapping, false imprisonment, aggravated assault against a household member with a deadly weapon, and criminal damage to property.

Defendant was incarcerated at the Lincoln County Detention Center awaiting trial. Sometime after he entered the facility, one of his fellow inmates contacted police and informed them that Defendant was willing to pay for the murders of Blankenship and Mills-Huband. Police then set up an undercover operation in which

4

an officer, disguised as a hit-man, visited Defendant. During the visit, Defendant asked the officer to murder Blankenship and Mills-Huband in return for six-thousand dollars. He provided a description of the two, details regarding where they could be found, and other pertinent information necessary to complete the killings. Police confirmed these details, and Defendant was charged under case number CV-06-189 with two counts of solicitation to commit first-degree murder.

The charges against Defendant were eventually consolidated and reassigned to a single judge. After both parties excused several judges for various reasons, case CV-06-117 (aggravated assault and other charges) was assigned to Judge Frank K. Wilson, and case CV-06-189 (solicitation) was assigned to Judge James W. Counts. On March 14, 2007, the two cases were consolidated and assigned to Judge Wilson for trial. Chief Judge Karen Parsons ordered consolidation sua sponte and in the interest of judicial economy because Mr. Huband was the Defendant in both cases. The record does not indicate that Defendant lodged an objection to this order.

Prior to consolidation, Defendant signed a waiver of preliminary hearing form on July 18, 2006, in case CR-06-117 (aggravated assault and other charges). At the bottom of the waiver form, which is signed by both Defendant and his attorney, two hand-written annotations state "kidnapping to be filed as false imprisonment as to Stephen Blankenship" and "[S]tate will also not file aggravated assault charges."

Exactly one week later, on July 24, 2006, a bind-over order was filed in which one count of kidnapping was amended to false imprisonment. That document also dismissed charges for aggravated assault against a household member with a deadly weapon and aggravated assault with a deadly weapon. Those changes are reflected in a criminal information, which was filed on July 28, 2006. Then, on June 11, 2007, after the cases were consolidated, the State recharged Defendant in a second amended criminal information with the crime of aggravated assault against a household member with a deadly weapon. The record does not indicate that Defendant lodged an objection below.

Defendant initially hired attorney Gary C. Mitchell to represent him in both cases. He later changed counsel and hired the Carpenter Law Firm to take over the representation. At trial, attorney David Pottenger, an associate at the Carpenter Law Firm, represented Defendant. Trial was held on June 12, 2007, and the jury returned a verdict of guilty on all counts.

Defendant now appeals his convictions and argues five issues: first, that the two criminal cases against him were improperly consolidated and reassigned; second, that he was denied due process when the State allegedly reneged on its agreement not to prosecute him for aggravated assault against a household member; third, that the jury was improperly instructed as to what constituted a deadly weapon; fourth, that

6

his trial counsel was ineffective; and fifth, that he was denied his right to an attorney of his choosing. We begin by analyzing Defendant's arguments regarding consolidation, due process, improper jury instructions, and right to counsel. We then analyze Defendant's ineffective assistance of counsel claim.

**DISCUSSION**

**A.     Preservation**

Defendant has failed to preserve his arguments regarding consolidation and reassignment, due process, improper jury instructions, and right to counsel. He provides no citation to the record to demonstrate that he preserved his improper consolidation and reassignment claim, nor do we find any. He openly apprises this Court of his failure to preserve arguments regarding due process and improper jury instructions; and finally, he indicates that his right to counsel claim "is not supported by the record at the present time." In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. However, we may still consider unpreserved issues for fundamental error. *State v. Pacheco*, 2007-NMSC-009, ¶ 8, 141 N.M. 340, 155 P.3d 745; *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (filed 1999); *In re Aaron L.*, 2000-NMCA-024, ¶

10, and as best we can tell, because such claims were unpreserved below, Defendant relies upon such error as the basis for his arguments.

**B.      Fundamental Error**

Fundamental error applies in two circumstances.  First, we will reverse for fundamental error when the defendant's "guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled by*, *State v. Bellanger*, 2009-NMSC-005, 146 N.M. 357, 210 P.2d 783.  Second, we will reverse the district court when "a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the" defendant.  *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633.  We only exercise such authority in rare circumstances.  *State v. Reyes*, 2002-NMSC-024, ¶ 42, 132 N.M. 576, 52 P.3d 948.  We presume that the rulings and decisions of the district court are correct; the party asserting error bears the burden of demonstrating it.  *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211.

**Consolidation and Reassignment of Charges**

Defendant argues that cases CR-06-117 and CR-06-189 were improperly consolidated and assigned to Judge Wilson.  Rule 5-105 NMRA and Rule 5-106 NMRA, he argues, contain the exclusive procedure for judicial reassignment, and

those procedures require that such reassignment be initiated by either the defendant or the state. Because the district court consolidated and reassigned these cases sua sponte, Defendant alleges that his conviction is void. He also argues: (1) that because Judge Parsons had previously been excused from the case, she was without authority to approve the reassignment; and (2) "that Judge Wilson was without jurisdiction to preside over CR-06-189." Because Defendant lodged no objections below, we analyze for fundamental error.

Contentions that the two cases were improperly reassigned and consolidated, even if true, do not constitute fundamental error without development in Defendant's brief. Defendant's bare assertions of impropriety fail to demonstrate how his guilt would be placed in question or how such facts shock the judicial conscience. His argument that Chief Judge Parsons was without authority to reassign the cases is particularly unpersuasive and undeveloped, especially considering that it was the State, not Defendant, who excused her. Most importantly, he never states how any of these activities prejudiced his case, nor does he provide any argument or relevant authority to develop his contention that Judge Wilson was without jurisdiction to hear his case.[1] As such, we refuse to consider the issue.

---

[1] We note that if Defendant had made a cogent argument as to why Judge Wilson was without jurisdiction to hear his case, we would have considered it. We may consider unpreserved questions of jurisdiction for the first time on appeal. *See In re Aaron L.*, 2000-NMCA-024, ¶ 10.

9

**Due Process**

Defendant claims he entered into an agreement with the State whereby he waived a preliminary hearing in CR-06-117 (aggravated battery and other charges) in consideration for the State's promise that it would amend the charge of kidnapping to false imprisonment and completely drop the charge for aggravated assault. As stated above, the State initially did so, but after consolidation with CR-06-189 (solicitation), it revived the charge of aggravated assault of a household member with a deadly weapon. Defendant did not object to being recharged with the crime, but he asserts on appeal that such a charge violates his due process rights and constitutes fundamental error. We disagree.

Nowhere does Defendant point this Court to any direct evidence that an agreement existed between himself and the State. The waiver form, on which the alleged agreement is written, is signed only by Defendant and his attorney. Admittedly, the fact that the State actually amended the kidnapping charge and dropped the charge for aggravated assault suggests such an agreement. But this circumstantial evidence, without more, does not demonstrate a fundamental error on these facts; it demonstrates neither how Defendant's guilt would be placed in question nor how such circumstances might shock the judicial conscience. We therefore refuse to consider this issue.

10

**Improper Jury Instructions**

Defendant also asserts that the jury was improperly instructed. As to the charges of aggravated burglary and aggravated assault of a household member, he contends that the jury was confused or misled by the inclusion of the term "rifle." Because "rifle" is not included in either instruction, UJI 14-306 NMRA and UJI 14-1632 NMRA, nor in the definition of "deadly weapon" in NMSA 1978, Section 30-1-12(B) (1963), he argues that the instructions were erroneous. When we analyze jury instructions for fundamental error, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). In order for such an instruction to mislead, it must "omit essential elements or be so confusing . . . that a court cannot be certain that the jury found the essential elements." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citations omitted), *cert. denied*, 2008-NMCERT-003, 143 N.M. 681, 180 P.3d 1180.

Defendant fails to demonstrate that the jury was misled by the inclusion of the term "rifle," in the above-referenced instructions. In fact, we find no error whatsoever with the inclusion of that term. Section 30-1-12(B), the statute cited by Defendant, provides that a "deadly weapon means any firearm, whether loaded or unloaded."

11

(internal quotation marks omitted). A rifle is a firearm. *See State v. Galaz*, 2003-NMCA-076, ¶ 5, 133 N.M. 794, 70 P.3d 784 (observing that a "firearm is a weapon from which a shot is fired by gunpowder, or [a] weapon capable of firing a missile, esp. a pistol or rifle") (alteration in original) (internal quotation marks and citation omitted); Webster's Third New International Dictionary 1954 (3d ed. 1986) (defining rifle as "a firearm having a rifled bore and intended to be fired from the shoulder"). Furthermore, Section 30-1-12(B) is not an exclusive list of deadly weapons. It explicitly includes "any other weapons with which dangerous wounds can be inflicted." Thus, because a rifle clearly constitutes a deadly weapon under the statute, its inclusion in the jury instructions was not erroneous.

**Sixth Amendment Violation**

Defendant states that he hired attorney Joshua Carpenter to represent him in both CR-06-117 (aggravated assault and other charges) and CR-06-189 (solicitation). At trial, Defendant claims that attorney David Pottenger showed up instead, unprepared to represent him. Such a substitution violates U.S. Const. amend. VI, Defendant argues, because it deprived him of the attorney of his choosing.

Defendant fails to demonstrate, legally, how such a violation occurred. Furthermore, we refuse to consider this argument because, as Defendant states, there is no factual basis in the record to support it. Accordingly, Defendant directs this

12

Court to no discernible instance of error, of any type.

**A.      Ineffective Assistance of Counsel**

Finally, we consider Defendant's argument that he received ineffective assistance of counsel.  In order to successfully make such a claim for the first time on direct appeal, a defendant must at least state a prima facie case for ineffective assistance, which requires two elements:  first, that the attorney's performance fell below that of one who is reasonably competent; and second, that the attorney's deficient performance prejudiced the defendant.  *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729.  Absent evidence to the contrary, we presume an attorney's competence.  *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.  If the defendant can state a prima facie case for ineffective assistance, we may remand the matter to the district court for an evidentiary hearing.  *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.  If he fails to do so, he must pursue his claim in a habeas proceeding.  *Id.*  Our courts have expressed a preference for pursuing ineffective assistance claims in habeas proceedings.  *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel"); *State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on

13

appeal that provides a basis for remanding to the [district] court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus[.]").

Defendant fails to state a prima facie claim for ineffective assistance. He makes several assertions, including that his attorney was unprepared for trial, that he failed to make key objections, that he did not request instructions on lesser included offenses, that he did not lodge a speedy-trial objection, that he improperly advised Defendant as to his constitutional right to testify in his own behalf, and that he failed to object when the State revived the charge of aggravated assault of a household member. Such allegations, Defendant admits, are not supported by the record. Instead, they constitute examples of what "could be shown if this matter is remanded for evidentiary findings." Notably, in more than nine pages of argument in his brief, Defendant cites to the record below only once. What is more, as we stated above, Defendant makes a variety of factual assertions not supported by the record, most of which relate to his ineffective assistance of counsel argument. *See In re Aaron L.,* 2000-NMCA-024, ¶ 27 (holding that we will not consider such facts).

Thus, the record below fails to support a prima facie claim for ineffective assistance, and we refuse to grant Defendant's request for remand to the district court for an evidentiary hearing. We leave the way open, however, for him to pursue the

14

issue in a habeas proceeding.  *See Baca*, 1997-NMSC-059, ¶ 25 (expressing the appellate court's preference for habeas proceedings in general).

**CONCLUSION**

For the reasons set forth above, we affirm Defendant's convictions in the district court and hold that he may pursue his ineffective assistance of counsel claim in a habeas proceeding.

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:


_____
**CYNTHIA A. FRY, Chief Judge**



_____
**TIMOTHY L. GARCIA, Judge**