This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: December 4, 2025**

**No. S-1-SC-40351**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ADELIO DAVID GALLEGOS, JR.,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Courtney B. Weaks, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Appellate Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Peter James O'Connor, Assistant Solicitor General
Albuquerque, NM

for Appellee

**DECISION**

**VARGAS, Justice.**

**I.     INTRODUCTION**

**{1}**    Defendant Adelio Gallegos, Jr. challenges his conviction for first-degree murder pursuant to NMSA 1978, Section 30-2-1(A)(1) (1994). He asserts there was insufficient

evidence to support a finding of guilt beyond a reasonable doubt for willful and deliberate intent murder. Defendant also asserts prosecutorial misconduct in closing argument. We exercise our discretion to affirm Defendant's conviction for first-degree murder by nonprecedential decision. *See* Rule 12-405(B) NMRA. Accordingly, we limit our discussion to the law and the facts necessary to decide the merits of this appeal. *See State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 (explaining nonprecedential decisions are written solely for the benefit of the parties, who know the details of the case).

## II. BACKGROUND

{2}     One January morning, Defendant sat in his car in a parking lot across from an Albuquerque methadone clinic. At some point, Victim Mike Guerra backed his car into Defendant's parked car, which led Defendant to get out of his vehicle as Victim drove away. As captured on surveillance video from the methadone clinic, Defendant walked up to Victim's car and tapped on the driver's side window until Victim pulled over and got out of his vehicle. The video does not contain any sound but it is clear the two men exchanged words. Defendant then walks out of the frame of the video and returns to his car while Victim gets back into his vehicle. Defendant re-enters the frame of the video having retrieved a loaded .22 caliber rifle from his car. Approximately seventeen seconds elapsed from the time Defendant walks out of the frame of the video and returns, pointing the rifle at Victim, who had gotten back out of his car. One witness testified he heard two shots and on the video, Victim can be seen ducking moments before he is shot at point-blank range in the abdomen by Defendant. Defendant testified he saw on the video that Victim ducked in response to the first shot he fired. With Victim falling onto the street after having been shot, Defendant runs away; seconds later, Defendant's car drives by, swerving slightly to avoid Victim, who is still writhing on the ground. Victim died as a result of the gunshot wound to his abdomen. Less than a minute-and-a-half elapsed from the time Victim's vehicle is visible in the surveillance video to the time Defendant fired the fatal shot.

{3}     Defendant was not interviewed by police until a year after the incident, at which point he confessed to shooting Victim because Victim called him a "punk" and would not give him money for the damage to his car allegedly caused by the fender bender. Defendant also testified Victim was "getting loud" and calling him names and that he was trying to get the dispute resolved with insurance or money.

{4}     The jury convicted Defendant of first-degree murder by deliberate killing for which Defendant was sentenced to life imprisonment. He appeals his conviction directly to this Court. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of . . . life imprisonment shall be taken directly to the supreme court.").

## III. DISCUSSION

{5}     Defendant alleges that there was insufficient evidence to support a finding of guilt beyond a reasonable doubt for willful and deliberate first-degree murder. He argues the

evidence supports only conviction for rash and impulsive second-degree murder. Defendant's argument relies heavily on the brief amount of time that elapsed between the fender bender and his shooting Victim. The time frame is indeed very brief. We recognize the distinction between a killing that is willful and deliberate and one that is rash and impulsive is not always readily discernible. But as we explain, we conclude there was sufficient evidence in this case to support Defendant's conviction for first-degree murder even though the entire incident happened very quickly.

**{6}** Defendant also makes several allegations of prosecutorial misconduct. We address Defendant's allegation that the district court abused its discretion by allowing the prosecutor to misstate the applicable law which distinguishes first-degree murder from second-degree murder. We then address his unpreserved claims that other statements the prosecutor made in closing argument denied him a fair trial.

## A. There Was Sufficient Evidence to Convict Defendant of First-Degree Murder

**{7}** It is undisputed that Defendant killed Victim. But Defendant asserts the evidence was insufficient to establish beyond a reasonable doubt that he had the deliberate intent to kill Victim which is required to support a conviction for first-degree murder. As we have stated:

> Our substantial evidence review of the sufficiency of the evidence to support a conviction must take into account both the jury's fundamental role as factfinder in our system of justice and the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture.

*State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 87, 478 P.3d 880. When sufficiency of the evidence is at issue, we "view the evidence in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences in favor of a verdict of conviction." *State v. Aguilar*, 1994-NMSC-046, ¶ 11, 117 N.M. 501, 873 P.2d 247. We determine whether "*any* rational jury could have found each element of the crime to be established beyond a reasonable doubt." *Id.* (emphasis in original) (internal quotation marks and citation omitted). We do not substitute our judgment for that of the jury. *Id.*

**{8}** We measure the sufficiency of the evidence against the jury instructions, which are the law of the case. *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409. The jury instruction setting out the element of first-degree murder challenged here reads: "The killing was with the deliberate intention to take away the life of Mike Guerra." *See* UJI 14-201 NMRA. The jury instruction went on to explain:

> A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the

consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

*See id.* Deliberate intention "is rarely subject to proof by direct evidence and often must be inferred from the circumstances." *State v. Astorga*, 2015-NMSC-007, ¶ 60, 343 P.3d 1245.

**{9}** When a killing occurs in a short amount of time, we rely on evidence "beyond the temporal aspect of the crime in order to find sufficient evidence of deliberation." *State v. Tafoya*, 2012-NMSC-030, ¶ 42, 285 P.3d 604. Here, that crucial evidence was before the jury. The State's case included evidence that (1) Defendant and Victim had exchanged words, (2) Defendant was angry because Victim had called him a "punk" and refused to compensate him, and (3) Defendant returned to his car, retrieved a loaded .22 caliber rifle, and returned with the loaded rifle pointed at Victim. From the videotaped confrontation between Defendant and Victim and from Defendant's testimony that he was angry at Victim, the jury could have reasonably inferred that Defendant had a motive for the shooting, which can be probative of a deliberate intention. *Astorga*, 2015-NMSC-007, ¶ 64; *cf. Tafoya*, 2012-NMSC-030, ¶ 51 (finding insufficient evidence to support deliberate intention to kill when, *inter alia*, no evidence was presented that the defendant and the victim exchanged words).

**{10}** The State's case also included witness testimony and a surveillance video of the killing from which the jury could reasonably infer Defendant shot the unarmed Victim a second time at pointblank range after his first shot missed Victim. *See State v. Martin*, S-1-SC-30913, dec. ¶ 24 (N.M. May 13, 2010) (nonprecedential) ("The multiple gunshots fired at close range on an unarmed victim permitted the jury to conclude Defendant acted with deliberate intent in shooting Victim.").

**{11}** With this evidence, the jury could reasonably find that a "calculated judgment and decision" was arrived at "in a short period of time." UJI 14-201. *See State v. Martinez*, 2021-NMSC-012, ¶ 51, 483 P.3d 590 (explaining that "[e]ven a momentary decision can support a conviction for first-degree murder when there is evidence that a defendant engaged in 'careful thought and the weighing of the consideration for and against the proposed action,' . . . despite how brief this consideration may have been" (quoting UJI 14-201)); *Astorga*, 2015-NMSC-007, ¶ 63 (noting that even a decision made to kill at the last second can be a deliberate one which supports a conviction for first-degree murder); *Martinez*, 2021-NMSC-012, ¶ 52 ("[T]he brevity of the time frame of a purported deliberation must be examined on a case-by-case basis.").[1]

---

[1]The State also argues that the after-the-fact evidence of Defendant disposing of the gun, evading prosecution, and lying to the police supports a reasonable inference of deliberate intent. But this evidence does not give any indication of what Defendant's intent was prior to the murder so it is not part of our

**{12}** Defendant presented an alternative version of the facts. He testified that he did not recall firing the gun, did not realize the gun had gone off, and did not know Victim had been shot and killed until the police came to speak to him nearly a year later. He denied he intended to kill Victim and said he only wanted to scare Victim so he would give Defendant insurance information or do something about hitting Defendant's car. Defendant also testified that he had struggled with drug addiction for most of his life, that in the months prior to the killing he had started using fentanyl, that he was receiving methadone for opiate addiction, and that he was taking Xanax and marijuana. Defendant testified that when he was high, he would act without thinking and that he was high on different drugs at the time of the killing.

**{13}** Under a substantial evidence review, it is the exclusive province of the jury to resolve factual inconsistencies in testimony. *State v. Trujillo*, 2002-NMSC-005, ¶ 28, 131 N.M. 709, 42 P.3d 814. The jury is also free to reject Defendant's version of the facts. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Here, the jury resolved the factual inconsistencies against Defendant and "we will not reweigh the evidence or substitute our judgment for that of the jury." *Trujillo*, 2002-NMSC-005, ¶ 28. Viewing the evidence in the light most favorable to the State, we conclude that a rational jury could have found that deliberate intent was established beyond a reasonable doubt. *Aguilar*, 1994-NMSC-046, ¶ 11 (clarifying that the proper inquiry is whether "*any* rational jury could have found each element of the crime to be established beyond a reasonable doubt" (emphasis in original) (internal quotation marks and citation omitted)).

**{14}** Defendant argues his case is comparable to *State v. Garcia*,1992-NMSC-048, 114 N.M. 269, 837 P.2d 862; *State v. Adonis*, 2008-NMSC-059, 145 N.M.102, 194 P.3d 717; and *State v. Carmona*, S-1-SC-36031, dec. (N.M. Jan. 25, 2018) (nonprecedential). We disagree. We have emphasized that the factual basis for *Garcia* is narrow. *Astorga*, 2015-NMSC-007, ¶ 62; *see also Flores*, 2010-NMSC-002, ¶ 21 ("The facts in *Garcia* have been distinguished many times by this Court from the facts in cases where there was sufficient evidence of deliberation."). In *Garcia*, we held that that there were no facts from which the jury could reasonably infer that the defendant formed a deliberate intention to kill. 1992-NMSC-048, ¶ 28. Here, however, the jury could infer the deliberate intention to kill from the videotaped confrontation between Defendant and Victim, Defendant's own testimony about his state of mind prior to the killing, Defendant's retrieving a loaded rifle from his car, and the videotape showing Defendant shooting at the unarmed Victim twice from point-blank range.

**{15}** In *Adonis*, the state failed to introduce evidence about what the defendant did before he shot the victim. 2008-NMSC-059, ¶ 22. Here, what happened before the killing was captured on surveillance video and it was undisputed that Defendant retrieved a loaded rifle from his car before the killing. Defendant also testified to his own state of mind prior to the killing, describing himself as angry because Victim called him a "punk" and would not give him money. *Carmona* is nonprecedential but it, too, is

---

analysis. *See, e.g., State v. Chavez*, 2024-NMSC-023, ¶ 28, 562 P.3d 521 ("A defendant's subsequent statements are only probative of criminal intent if they relate back to the defendant's mens rea prior to the commission of the crime.").

distinguishable. There, we specifically remarked upon the defendant's failure to retrieve the weapon before he shot the victim. *Carmona*, S-1-SC-36031, dec. ¶ 28.

**{16}** Here, Defendant walked away from Victim and returned to his car. At this point, Defendant could have gotten in his car and ended the altercation. Indeed, it is clear from video surveillance that Victim did not otherwise follow or further provoke Defendant. Instead, Defendant retrieved a loaded rifle from his car, walked back to Victim's car, and shot at Victim from just feet away. At this point, the jury was free to credit Defendant's testimony that he did not intend to kill Victim; he only wanted to scare Victim so he would give Defendant insurance information or otherwise do something about hitting Defendant's car. Defendant had yet another opportunity to end the altercation at that point, having seemingly achieved his goal of scaring Victim by shooting a bullet over Victim's head with a rifle from just feet away. Indeed, Defendant testified he saw on the surveillance video that Victim ducked in response to the first shot he fired.

**{17}** But Defendant's conduct did not end at that point. Instead, continuing to keep his gun aimed at Victim, Defendant went further than apparently trying to scare Victim: he pointed his gun lower this time, aimed the gun at Victim's abdomen, fatally shot Victim at point-blank range, and immediately ran in the opposite direction. Finally, video surveillance captures Defendant's car driving by, swerving slightly to avoid Victim who was writhing on the ground. Such a view is supported by the evidence and, on appeal, we reiterate that we must view such evidence "in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences in favor of a verdict of conviction." *Aguilar*, 1994-NMSC-046, ¶ 11. For the reasons stated above, we conclude there was sufficient evidence to convict Defendant of willful and deliberate first-degree murder.

**B.    The Allegations of Prosecutorial Misconduct Do Not Indicate Any Abuse of Discretion by the District Court Nor Do They Rise to the Level of Fundamental Error**

**{18}** Defendant asserts that there were various incidents of prosecutorial misconduct during closing argument which support this Court vacating his conviction for first-degree murder. These include the prosecutor's alleged misstatement of the applicable law defining the difference between first-degree and second-degree murder and unpreserved claims that the prosecutor improperly disparaged Defendant's diminished capacity defense, improperly relied upon information outside the record, and improperly invited the jury to rely upon speculation and conjecture.

**{19}** When error is preserved at trial, we review for abuse of discretion. *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. When counsel does not object at trial, we review only for fundamental error. *Id.* "In both instances, however, the reviewing court must determine whether the relative weight of the error meets the threshold required to reverse a conviction." *Id.* To make this determination, we rely on three factors:

(1) whether the statement invades some distinct constitutional protection;
(2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense.

*Id.* "In applying these factors, the statements must be evaluated objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.*

### 1. The alleged misstatements of law

{20}   Defense counsel objected to statements the prosecutor made in closing about the jury instructions for first-degree and second-degree murder. The prosecutor discussed the instruction for first-degree murder and then moved on to the instruction for second-degree murder. The prosecutor explained that the elements instruction for second-degree murder required that Defendant

> knew that his acts created a strong probability of death or great bodily harm to Mike Guerra . . . that the Defendant intentionally pointed a gun at Mike Guerra, intentionally pulled the trigger but did not intend to kill Mike Guerra. So first-degree murder says you point the gun, you shoot, you intend to kill. Second, he intends to shoot Mr. Guerra but didn't intend to kill him.

At this point, defense counsel objected. A bench conference was held, where defense counsel argued that the prosecutor's statements were not a fair reading of the jury instructions. For her part, the prosecutor explained she was trying to distinguish between specific intent and general intent, which she described as the difference between a deliberate act versus a deliberate intention to kill, pointing out that the general intent instruction "says it has to be intentional." Defense counsel countered that "the jury instruction reads as a jury instruction . . . , the jury needs to interpret it and … that the State is … giving a false interpretation of the jury instructions." The remainder of the bench conference is inaudible. In the wake of the bench conference, the prosecutor went on to immediately repeat that first-degree murder required the act of firing the gun "with the intent to kill." She then discussed the general intent instruction and explained that for second-degree murder, "the State must prove beyond a reasonable doubt that the Defendant acted intentionally when he committed the crime." She explained that for second-degree murder, Defendant had to have "intentionally pointed that gun at Mr. Guerra and intentionally fired that gun knowing that it could cause death or great bodily harm but to not intend death."

{21}   At this point, defense counsel asks if the parties can approach the bench, which they do. Defense counsel objects that there is nothing in the jury instruction that says Defendant "has to not intend death," and the prosecutor responds that second-degree murder is a general intent crime. Unfortunately, the comments and ruling from the bench are once again inaudible. But the prosecutor argues immediately after the bench conference that Defendant committed first-degree murder because "there is no way that the Defendant fired the gun at close range at Mike Guerra without having the intent to

kill" and because "there is no way that an elderly man walking with a cane, that there is any thought in his mind that I am going to shoot him, but I don't want to kill him."

**{22}** For our analysis, we assume the district court overruled defense counsel's objections. We thus review for abuse of discretion. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Bailey*, 2017-NMSC-001, ¶ 12, 386 P.3d 1007 (internal quotation marks and citation omitted). The trial court does not abuse its discretion unless its ruling is clearly untenable or unjustified by reason. *Id.*

**{23}** Defendant asserts that there "is no question that the district court erred in failing to correct this repeated mischaracterization of a critical distinction" between first-degree and second-degree murder. He claims the State turned first-degree murder into a catch-all for *all* intentional murders, which was a plainly erroneous statement of law.

**{24}** Defendant does not argue the district court actually misstated the applicable law. It clearly did not. Prior to the State's closing argument, the Court read the jury instructions to the jury, which are the law of the case. *Holt*, 2016-NMSC-011, ¶ 20. The Court read the proper elements instructions for first-degree and second-degree murder and advised the jury what was said in argument was not evidence.

**{25}** Nor is it clear that the prosecutor misstated the applicable law. As the prosecutor explained during the bench conferences, she was attempting to distinguish between the deliberate intent required for a conviction for first-degree murder and the general intent required for a conviction for second-degree murder. Because first-degree murder requires proof beyond a reasonable doubt that a defendant deliberately intended to take a victim's life, it is a specific intent crime. *See State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (explaining that the mens rea for a specific intent crime is established when a statute "expressly requires proof of intent to do a further act or achieve a further consequence" (internal quotation marks and citation omitted)). By contrast, the jury in this case was instructed that second-degree murder required only general intent. *See* UJI 14-141 NMRA. For general criminal intent, Defendant had to have acted intentionally when he committed the crime even though he may not have known that his acts were unlawful. *Id.*

**{26}** The prosecutor focused on second-degree murder as a general intent crime. But she did *not* argue that second-degree murder was categorically an unintentional crime. To the contrary, she correctly argued to the jury that for Defendant to be convicted of second-degree murder, the State had to prove beyond a reasonable doubt that Defendant acted intentionally. She explained that second-degree murder required proof beyond a reasonable doubt that Defendant intentionally pointed the gun at Victim and intentionally fired the gun, knowing it could cause death or great bodily harm. Thus, we reject Defendant's contention that the prosecutor's statements misstated the applicable law by turning first-degree murder into a catch-all for *all* intentional murders.

**{27}** Even if we assume the prosecutor misstated the applicable law by implying that if Defendant intended to kill Victim, he would be guilty of first-degree murder but not

second-degree murder, we cannot conclude there was reversible error. We have long held that not all misstatements of the law in closing argument require reversal. *State v. Armendarez*, 1992-NMSC-012, ¶ 10, 113 N.M. 335, 825 P.2d 1245; *see also State v. Powell*, S-1-SC-39377, dec. ¶ 28 (N.M. May 6, 2024) (nonprecedential). We apply the *Sosa* factors to determine if the district court abused its discretion simply by overruling defense counsel's nonspecific objections to the prosecutor's statements. In so doing, we analyze the prosecutor's statements "objectively and in the context of the prosecutor's broader argument and the trial as a whole." *Sosa*, 2009-NMSC-056, ¶ 26.

**{28}** Under the first *Sosa* factor, we assess whether the statements invaded a distinct constitutional protection. *Id.* Defendant argues the alleged misstatements of law "invaded Mr. Gallegos's right to have all of the elements upon which he was convicted established beyond a reasonable doubt, and his constitutional right to present a defense to that element." Having just determined that there was sufficient evidence to support Defendant's conviction for first-degree murder, it follows that the prosecutor's statements did not deprive Defendant of any constitutional right to have each element of the offense for which he was convicted established beyond a reasonable doubt. Nor was Defendant denied an opportunity to present a defense to the deliberate intent element of first-degree murder. The jury was instructed to consider whether Defendant was intoxicated from drugs and if so, what effect that intoxication had on his ability "to form the deliberate intent to take away the life of another." Defendant does not explain how the prosecutor's statements of the applicable law robbed him of this defense nor does he demonstrate that these statements lowered any burden of proof as to deliberate intent, an essential element of the mens rea required for a first-degree murder conviction. *Cf. State v. Garvin*, 2005-NMCA-107, ¶¶ 19-20, 138 N.M. 164, 117 P.3d 970 (explaining that prosecutor's statements in closing lowered the burden of proof on an essential element from actual knowledge to negligence or recklessness). This leads us to conclude the first factor does not support Defendant's claim of reversible error.

**{29}** We next look at whether the statement is isolated and brief or repeated and pervasive. *Sosa*, 2009-NMSC-056, ¶ 26. The statements of the prosecutor that the defense objected to were confined to a couple minutes of her closing. They were made in the context of her reviewing the jury instructions and while briefly repeated, they were not pervasive. Thus, this factor gives only slight support to Defendant's claim of reversible error. Defendant did not invite the alleged misstatements, so the third *Sosa* factor does not diminish Defendant's claim.

**{30}** The prosecutor's explanation in closing argument of the difference between the intent required for first-degree murder and that required for second-degree murder "may have been somewhat imprecise." *State v. Duffy*, 1998-NMSC-014, ¶ 53, 126 N.M. 132, 967 P.2d 807, *overruled in part on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. But her comments were not misleading in the context of her overall closing argument, in which she sought to distinguish the deliberate intent required for a first-degree murder conviction from the general intent required for a conviction for second-degree murder. Moreover, the jury instructions correctly stated the applicable law, and the prosecutor's comments to the jury were in the context of her

explaining the jury instructions. Defense counsel also took the opportunity in closing argument to explain the jury instructions, particularly the deliberate intent required for a first-degree murder conviction, which she argued had not been proven by the State. Defense counsel also expressed in closing argument her disagreement with the way the prosecutor characterized the difference between first-degree and second-degree murder and explained her understanding of the jury instruction defining deliberate intent. The jury was given a copy of the instructions and instructed that the arguments of counsel were not evidence. The instructions included one which clearly explained that proof beyond a reasonable doubt that Defendant committed second-degree murder or voluntary manslaughter required a finding that Defendant "acted intentionally when he committed the crime." *See* UJI 14-141.

**{31}** To find reversible error, "we would have to accept that the jury took the comments made during [the prosecutor's] closing and applied them as law of the case, ignoring the written instructions." *Armendarez*, 1992-NMSC-012, ¶ 13. Looking at the statements objectively in the context of the prosecutor's overall closing argument, we "presume that the jury followed the written instructions and did not rely for its verdict on one very brief part of the State's closing remarks." *Id.*; *cf. Powell*, S-1-SC-39377, dec. ¶¶ 27-31 (rejecting defendant's claim that the prosecutor's alleged misstatements of the law were fundamental error). The prosecutor did not misstate the law by turning first-degree murder into a catch-all for *all* intentional murders and even if her statements were somewhat imprecise, we conclude there was no reversible error under *Sosa*.

**{32}** Given these circumstances, we cannot conclude that the district court's ruling was clearly contrary "to the logic and effect of the facts and circumstances of the case," *Bailey*, 2017-NMSC-001, ¶ 12 (internal quotation marks and citation omitted), or that it was "arbitrary, capricious, or beyond reason." *Duffy*, 1998-NMSC-014, ¶ 46. Accordingly, we hold the district court did not abuse its discretion by overruling Defendant's objections to the prosecutor's attempts to distinguish between the specific intent required for first-degree murder and the general intent required for second-degree murder.

## 2. The unpreserved claims of prosecutorial misconduct

**{33}** Defendant asserts he was deprived of a fair trial on account of three unpreserved claims of prosecutorial conduct during closing argument. *See State v. Laney*, 2003-NMCA-144, ¶ 33, 134 N.M. 648, 81 P.3d 591 (noting unpreserved claim of error when defendant "did not object on the basis of prosecutorial misconduct" and failed to "request the district court to take any further action because of any prejudice that was alleged to occur").

**{34}** He argues the prosecutor improperly disparaged his diminished capacity defense, improperly relied on evidence outside the record, and improperly asked the jury to rely upon speculation and conjecture. A prosecutor's misconduct creates fundamental error when "it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Lensegrav*, 2025-NMSC-016, ¶ 28, 572 P.3d 924 (internal quotation marks and citation

omitted). To hold there is fundamental error, we must be convinced there was a reasonable probability that the prosecutor's misconduct was a significant factor in jury deliberations in relation to the other evidence before the jury. *Sosa*, 2009-NMSC-056, ¶ 35. This again requires analysis of the *Sosa* factors. *See id.* (applying factors under fundamental error standard).

**{35}**     Defendant argues the prosecutor committed misconduct when she disparaged his diminished capacity defense by claiming in closing argument that the defense was asking the jury to feel sorry for Defendant because he was a drug addict and to relieve him of accountability for Victim's death. He does so without addressing the *Sosa* factors. Relying instead on *State v. Diaz*, 1983-NMCA-091, 100 N.M. 210, 668 P.2d 326, Defendant asserts the prosecutor misstated the law on the diminished capacity defense and thus "denied Mr. Gallegos a legally recognized defense." *Diaz* is readily distinguishable and this claim is belied by the record.

**{36}**     In *Diaz*, the prosecutor flatly misstated the law by commenting that the defendant's intoxication defense required expert testimony. *Id.* ¶ 17. Here, there was no analogous misstatement of law. Defendant testified about his drug addiction and drug use and the jury was properly instructed on the diminished capacity defense. The gravamen of Defendant's claim is that the prosecutor undercut the diminished capacity defense by mischaracterizing Defendant's defense as one based on sympathy and lack of accountability. But Defendant does not argue and we do not discern anything in these remarks that was so egregious, prejudicial, and persuasive that Defendant was denied a fair trial. We also note Defendant again fails to present argument or authority on the applicable *Sosa* factors so we need not consider this issue further. *Cf. State ex rel. State Eng'r v. Romero*, 2022-NMSC-022, ¶ 2 n.1, 521 P.3d 56 (noting that we do not address issues when appellant "makes no argument and provides no facts in briefing"); *State v. Hobbs*, 2022-NMSC-018, ¶¶ 40-42, 518 P.3d 489 (declining to conduct fundamental error review when the state cited no authority in support of its position).

**{37}**     Finally, Defendant argues the prosecutor's reference to evidence outside the record and its "dramatized narrative" of Defendant as a "drug fiend" who demanded money from frightened Victim were fundamental error. The reference to evidence outside the record concerned a brief and isolated statement in the context of the prosecutor's assertions that the 63-year-old elderly Victim was not the aggressor. The prosecutor commented that Victim "was somebody who was just released from being hospitalized with COVID." Defendant points out that the district court had earlier in the trial ruled that information about Victim's current health was inadmissible on hearsay and relevance grounds. We agree that it was improper for the prosecutor to refer to matters outside the record. *Trujillo*, 2002-NMSC-005, ¶ 60. But this comment did not invade a distinct constitutional provision and was isolated and brief. *Sosa*, 2009-NMSC-056, ¶ 26. Nor did it touch on an element the jury was required to find to convict Defendant of first-degree or second-degree murder. *See State v. Torres*, 2012-NMSC-016, ¶¶ 12, 15, 279 P.3d 740 (affirming conviction when prosecutor's comment on matters outside the record were peripheral to the crime for which the defendant was being tried). Looking at this statement objectively and in the context of the trial as a whole and the prosecutor's broader argument, we are not convinced there was a

reasonable probability that the prosecutor's misconduct was a significant factor in jury deliberations in relation to the other evidence before the jury. *Sosa*, 2009-NMSC-056, ¶ 35. Thus, we conclude there was no fundamental error.

**{38}**  We come to the same conclusion regarding the prosecutor's alleged dramatized narrative of the encounter between Defendant and Victim. Defendant does not point to any statement in the prosecutor's closing when she actually referred to Defendant as a "drug fiend" and we find no such reference in our review of the record. Moreover, the lethal encounter between Defendant and Victim was captured on video, which gives both the prosecutor and the jury virtually an eyewitness ability to draw reasonable inferences from what they saw. *See State v. Smith*, 2025-NMSC-025, ¶ 36, ___ P.3d ___ (viewing the record in favor of the jury's verdict and concluding the jury reasonably inferred from testimony and exhibits presented that defendant conspired to commit first-degree murder by deliberate killing); *State v. Herrera*, S-1-SC-40214, dec. ¶ 6 (N.M. Feb. 24, 2025) (nonprecedential) (explaining that jury was free to reject defendant's assertions and holding that substantial evidence supported jury's verdict of first-degree felony murder when viewing the evidence presented as a whole and indulging all reasonable inferences in favor of jury's verdict).

**{39}**  It was not unreasonable for the prosecutor to infer from the video and the facts and circumstances of the case that Defendant's actual motive was not to resolve a dispute about damage to his car but to try to extract money from Victim for his habitual drug use. *See Duffy*, 1998-NMSC-014, ¶ 58 (determining that the prosecutor's comments during closing argument "stated conclusions and inferences reasonably drawn from the facts and circumstances and were within the permissible range of argument" (internal quotation marks and citation omitted)). Defendant testified about his habitual drug abuse and told the jury he had been addicted to and was using drugs the day of the killing. Defendant also testified that he returned to his car to get insurance papers, but there is no indication on the video that he made any effort to show Victim papers of any kind. On the contrary, the video clearly indicates Defendant returned to the scene pointing his loaded rifle at Victim, who he immediately shot at point-blank range.

**{40}**  Given these facts and circumstances, we conclude it was within the permissible range of argument for the prosecutor to suggest that Defendant's actual motive was not compensation for the alleged damage to his vehicle caused by the fender bender but instead was to extract money for drug use from the elderly, non-threatening Victim. Thus, we find no prosecutorial misconduct and certainly none which was so egregious, persuasive, and prejudicial that it was fundamental error which deprived Defendant of a fair trial.

## C.     There Is No Cumulative Error

**{41}**  Defendant asks us to apply the doctrine of cumulative error. This doctrine "applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal

quotation marks and citation omitted). Here, we have found no error. Because there is no error to accumulate, "there can be no cumulative error." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (internal quotation marks and citation omitted).

## IV.    CONCLUSION

**{42}**    For the reasons stated above, we affirm Defendant's conviction for willful and deliberate first-degree murder.

**{43}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**